# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL ENRIQUEZ,<br><br>　　　　　Defendant. | Case No. 18-cr-03575-BAS<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 53)** |

On June 27, 2019, the Court sentenced Mr. Enriquez to twenty-seven months in custody, concurrent on both counts, of which he has served approximately fifteen months. (ECF No. 45.) Mr. Enriquez now moves for compassionate release because of COVID-19. (ECF No. 53 ("Defendant's Motion").) The Government opposes. (ECF No. 61 ("Government's Response").) Mr. Enriquez also filed a reply and a supplemental declaration from counsel. (ECF Nos. 62, 66.) Because this Court finds that Mr. Enriquez has failed to show extraordinary and compelling reasons for his release, and because the 18 U.S.C. § 3553(a) factors likewise do not support the reduced sentence, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

Mr. Enriquez pled guilty to making false statements to a federal officer and to obstruction of justice. (Presentence Report ("PSR") ¶ 1, ECF No. 19.) The charges stemmed from a story invented by Mr. Enriquez who was attempting to assist his lawyer "D.B." in D.B.'s bankruptcy proceedings. (PSR ¶¶ 3–39.) D.B. felt the bankruptcy judge was issuing unfavorable opinions against him. (*Id.*) Mr. Enriquez told D.B. the bankruptcy judge frequented a high-end escort service owned by Mr. Enriquez. (*Id.*) To corroborate this story, Mr. Enriquez "created a fraudulent electronic document and altered emails purporting to implicate the bankruptcy judge in prostitution." (PSR ¶ 5.) After his relationship with D.B. soured, Mr. Enriquez told one of D.B.'s creditors that D.B. had information he was using to blackmail the bankruptcy judge. (PSR ¶ 6.) Mr. Enriquez did not tell the creditor that the information was false or that it was Mr. Enriquez who had made the story up. (*Id.*) The F.B.I. received information that D.B. may be attempting to extort the bankruptcy judge and interviewed Mr. Enriquez. (*Id.*) Mr. Enriquez made false statements to the F.B.I. implicating the bankruptcy judge in prostitution and provided the false electronic documents he had created. (*Id.*) The information was leaked to *The Hollywood Reporter*, causing harm to the bankruptcy judge and disrupting F.B.I. functions. (PSR ¶ 41.)

Although many of the convictions are old, Mr. Enriquez has a lengthy record of larceny and theft, including nine felony theft-related offenses and a conviction for felon in possession of a firearm. (PSR ¶¶ 63–84.)

At the time his Presentence Report was filed, Mr. Enriquez was taking medications for his high blood pressure. (PSR ¶ 97.) According to the Government's Response, Mr. Enriquez's high blood pressure has continued to be managed by the Bureau of Prisons ("BOP") with prescription medications. (Government's Response at 10.) At the time of the PSR, Mr. Enriquez had lost fifty pounds over the past few years. (PSR ¶ 97.) According to the Government's Response, as of September 11,

2020, Mr. Enriquez weighed 195 pounds and was 5'10"—giving him a BMI of 28. (Government's Response at 12.)  Finally, although Mr. Enriquez claims he suffers from "respiratory issues," the Government claims he has denied respiratory impairment during his medical checkups at the BOP—most recently on October 7, 2020.  (*Id.*)  Neither party submits any medical records from the BOP.

Mr. Enriquez requested compassionate release from the Warden at FCI Oakdale, where he is being housed, but the Warden did not respond within 30 days. (Defendant's Motion, Exhs. K, L.)  Although Mr. Enriquez's motion references both FCI Oakdale I and FCI Oakdale II, he does not indicate which facility is the one where he is being housed.  FCI Oakdale I did, in fact, suffer a serious outbreak of COVID-19 last spring.  However, of the originally infected 236 inmates, 226 of those are now recovered.  *See* BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited January 5, 2021).  However, about half of the 44 staff originally infected, or 23 staff members, are still listed as positive.  *Id.*  With respect to Oakdale II FCI, out of 84 inmates infected, 82 have now recovered, and out of 18 staff originally testing positive, 12 remain infected.  *Id.*

## II.     ANALYSIS

### A.     Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010).  A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Enriquez must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Mr. Enriquez has exhausted his administrative remedies under the second route. He provides proof that he requested relief from the Warden, but the Warden failed to act within 30 days.

### B. Extraordinary and Compelling Reasons

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Mr. Enriquez argues that "extraordinary and compelling reasons" exist because FCI Oakdale has suffered a severe outbreak of COVID-19 and he has high blood pressure, obesity and "respiratory issues." (Defendant's Motion.) It is now axiomatic that COVID-19 is a serious illness, both contagious and causing death to a certain group of people. Those in custody, by virtue of their close proximity, are at greater risk of contagion. Yet that cannot mean that all individuals in custody, regardless of their exposure, risk or criminal background, should be released under the "extraordinary and compelling" reasons section of the compassionate release provisions. *See United States v. Eberhart*, 448 F. Supp. 3d 1086, 1988 (N.D. Cal.

2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release."); *see also Riley v. United States*, Nos. C19-1522 JLR, CR 14-011 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020) (same).  Instead, the assessment requires a careful consideration of a defendant's background, risk to the community upon release, risk of exposure and risk of death if the virus is contracted.  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *Holden*, 452 F. Supp. 3d at 966.

The Centers for Disease Control and Prevention ("CDC") reports that "COVID-19 is a new disease.  Currently there are limited data and information about the impact of many underlying medical conditions and whether they increase the risk for severe illness from COVID-19."  *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).  That said, "[b]ased on what we know at this time," people with uncontrolled hypertension or high blood pressure and people who are overweight (defined as having a BMI between 25 and 30) "might" be at increased risk of severe illness from COVID-19.  *Id*.

However, Mr. Enriquez provides no evidence that he suffers from uncontrolled high blood pressure.  At the time of his Presentence Report, it appeared Mr. Enriquez's high blood pressure was well controlled by his medications.  (PSR ¶ 97.)  The Government represents that this has continued to be the case while he has been housed at the BOP.  (Government's Response at 10.)  Mr. Enriquez does not provide any convincing evidence otherwise.

Additionally, although Mr. Enriquez may be overweight, with a BMI of 28, the sad reality is that about half the U.S. population is obese.  *See United States v. Aguilar*, No. 18-cr-00275-LHK, 2020 WL 6081779, at *5 (N.D. Cal. Oct. 5, 2020)

("As of 2017-2018, 42.4% of American adults are obese.") (citing Craig M Hales et al., *Prevalence of Obesity and Severe Obesity Among Adults, United States, 2017-2018*, CDC (Feb. 2020), https://www.cdc.gov/nchs/products/databriefs/db360.htm). Even more starkly, "[i]n 2015, the Bureau of Justice Statistics reported that in 2011-2012, 74% of prisoners and 62% of jail inmates were overweight, obese or morbidly obese." *Id.* (citing U.S. Dept. of Justice, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12* (Oct. 4, 2016), https://www.bjs.ogv/content/pub/pdf/mpsfpji112.pdf). Assuming this is still the case in 2020, if obesity qualified as an extraordinary and compelling reason for a sentence reduction, the vast majority of prisoners would currently be eligible for release.

Mr. Enriquez is not obese. He is simply overweight, a condition he appears to be remedying. (PSR ¶ 97.) And even if he is now obese, this alone is insufficient to show extraordinary and compelling reasons for his release.

Finally, vague allegations of "respiratory issues" without any evidence or further elucidation are insufficient to support Mr. Enriquez's request for compassionate release. Mr. Enriquez fails to meet his burden of showing extraordinary and compelling reasons for his release.

### C.   Section 3553(a) Factors

Even if Mr. Enriquez had established "extraordinary and compelling" reasons for his release, the Court finds the § 3553(a) factors also mandate denying his motion. The nature and circumstances of the offense and the history and characteristics of Mr. Enriquez support at least the twenty-seven months imposed. Mr. Enriquez has a history of being a con man, and the lengths to which he went in this case support the need for a lengthy sentence to reflect the seriousness of the offense that he committed. A time served sentence would not adequately provide just punishment or promote respect for the laws he violated.

### III. CONCLUSION

Because Mr. Enriquez fails to show that extraordinary and compelling reasons support his request for release and because the § 3553(a) factors do not support a lower sentence, the Court **DENIES** Mr. Enriquez's Motion for Compassionate Release. (ECF No. 53.)

**IT IS SO ORDERED.**

DATED: January 5, 2021

Hon. Cynthia Bashant
United States District Judge